
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES,**

v.                                                      **Criminal Action No. 4:13cr17**

**David Edmundo MUNOZ-GIRON,**

**Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant David Edmundo Munoz-Giron's

("Defendant" or "Munoz-Giron") Motion to Dismiss the Indictment ("Motion"). Def.'s Mot. to

Dismiss, ECF No. 13 (hereinafter, "Doc. 13"). On March 26, 2013, the Court convened a

hearing and ruled from the bench. The Court **GRANTED** Defendant's Motion and now issues

this Opinion and Order setting forth the reasons for its ruling in further detail.

## I. BACKGROUND

### A.    Factual Background[1]

Defendant was born in 1976 in Honduras, and came to the United States in 1987 as a

lawful permanent resident. Doc. 13. Between 1994 and 1995, Defendant was convicted of drug

possession five times, once for possession of cocaine and four times for possession of Marijuana.

Gov't Opp'n to Def.'s Mot. to Dismiss, ECF No. 17 (hereinafter, "Doc. 17").[2] In August 1995,

---

[1] The facts set forth in this Opinion and Order are drawn from the Motion and Opposition, which incorporate materials contained in Defendant's Alien Registration Administration File ("A-File") and a certified copy of the Immigration Court's file of Defendant's 1996 deportation proceedings ("Court File").

[2] Defendant's convictions were for violation of Fla. Stat. Ann. § 893.13 (West 2012) (for the version in place at the time of Defendant's convictions, see Criminal Justice and Corrections, General Amendments, 1993 Fla. Sess. Law Serv. Ch. 93-406 (S.B. 26-B)).

deportation proceedings were commenced against Defendant; a hearing was held in absentia on July 26, 1996, and Defendant was removed from Miami, Florida, to Honduras on August 20, 1996.[3]

### 1. The Deportation Proceeding

On January 2, 1996, the Order to Show Cause and Notice of Hearing—the charging document in an immigration action—was personally served on Defendant while he was in custody. Doc. 13, Ex. 1 (hereinafter, "Order to Show Cause"). The Order to Show Cause indicated that Defendant was subject to deportation pursuant to 8 U.S.C. §§ 1227(a)(2)(B)(i) and (a)(2)(A)(iii), a consequence of Defendant's convictions for controlled substance offenses. Id.

At some time after receiving the Order to Show Cause, Defendant retained counsel. Doc. 13 at 2.[4] On February 6, 1996, Defendant appeared in Immigration Court, where his hearing was rescheduled for February 23, 1996. Id.; see also Doc. 13, Ex. 4. The matter was continued several times, until on June 10, 1996, the deportation hearing was set for July 26, 1996. Doc. 13 at 2; see also Doc. 17 at 2.

The Government maintains that a letter providing Defendant with notice of the July 26, 1996 hearing was sent to Defendant via certified mail on June 10, 1996. Doc. 17 at 2; see also Doc. 17, Exs. 2 (notice), 3 (signed certified receipt).[5] In the Motion, Defense counsel indicates

---

The Order to Show Cause does not provide specific information as to the subsection under which Defendant was convicted. At the hearing, however, the parties indicated that Defendant's controlled substance convictions were for simple possession. The information provided does not state whether any of Defendant's convictions included a finding that Defendant had been previously convicted of a controlled substance offense.

[3] The term deportation and removal are used interchangeably in this Opinion and Order.

[4] On June 7, 1996, Defendant's retained counsel, Steven Amster, sent a fax to the Immigration Court seeking to withdraw from the case. Doc. 13 at 2; Doc. 13, Ex. 2. The Immigration Court responded to Amster on June 12, 1996, indicating that he had never been acknowledged as Defendant's attorney of record, because he had never appropriately made an appearance. Doc. 13 at 2.

[5] The Court observed a few discrepancies between the letter purportedly providing notice and the envelope in which it was sent. Doc. 17, Exs. 2, 3. The date of the letter and postmark do not match exactly, and the identifying

2

that he was unable to find any evidence that notice of the scheduled date was sent to Defendant. Doc. 13 at 2. On June 26, 1996, Defendant was arrested and held at the Dade County Jail in Florida. Doc. 17 at 2.[6] The next day, the Immigration and Naturalization Service ("INS") contacted the Dade County Jail to place an immigration detainer on Defendant. Id.; see also Doc. 17, Ex. 5.[7] On July 26, 1996, Defendant was ordered deported in absentia. Doc. 13 at 3; see also Doc. 13, Ex. 7.[8] Twenty-five days later, on August 20, 1996, the INS removed Defendant to Honduras. Doc. 13 at 3.

### 2. The Instant Offense

On December 17, 2012, Immigration and Customs Enforcement ("ICE") agents arrested Defendant in Hampton, Virginia. Doc. 17 at 3. That day, Defendant completed a Record of Sworn Statement, in which he admitted that he had reentered the United States in 2002. Id.

### B. Procedural History

On January 16, 2013, Defendant was indicted by a federal grand jury in Norfolk, Virginia on one count of Illegal Re-entry of a Previously Deported Alien, in violation of 8 U.S.C. § 1326(a). Indictment, ECF No. 1 (hereinafter, "Doc. 1"). On February 14, 2013, Defendant filed an unopposed Motion for Leave to File After the Deadline ("Motion for Leave to File") and the

---

number on the return receipt does not match the identifying number on the envelope. See Id. However, the signature contained on that certified receipt matches the signature provided by the Defendant on his certificate of service for the Order to Show Cause. Doc. 17, Ex. 1.

[6] Defendant was charged with Grand Theft Auto, and a few other charges. Id. Defendant asserts that the charges were later dropped. Doc. 18 at 2. At the hearing, the parties verified that Defendant was never convicted of this charge.

[7] In 1996, immigration matters were handled by the Immigration and Naturalization Service ("INS"), a division of the Department of Justice ("DOJ"). In 2002, immigration matters became the responsibility of United States Immigration and Custom Enforcement ("ICE"). Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). Here, the Court exclusively refers to the INS as the agency handling Munoz-Giron's deportation, and any statutes or regulations cited refer to the law in place on July 26, 1996, unless otherwise indicated.

[8] The decision of the Immigration Judge ("IJ") indicates that Defendant failed to appear and also failed to show any reason for his failure to appear, giving the judge the right to hold deportation proceedings in absentia under 8 U.S.C. § 1252(b) (1994 & Supp. | 1997) (enacted Apr. 24 1996). See Doc. 13, Ex. 7.

instant Motion. Def.'s Mot. for Leave to File After Deadline, ECF No. 12 (hereinafter, "Doc. 12"); see also Doc. 13. The Court granted Defendant's Motion for Leave to File on February 19, 2013. Order Granting Leave to File Mot. After Deadline, ECF No. 14 (hereinafter, "Doc. 14"). On February 27, 2013, the Government filed a Motion for Extension of Time to File Response/Reply ("Motion for Extension"), seeking an extension until March 15, 2013, to allow time for the Government to obtain documents from the Immigration Court that conducted Defendant's deportation proceedings. Gov't Mot. for Extension of Time to File Response, ECF No. 15 (hereinafter, "Doc. 15"). The Court granted the Motion for Extension on March 5, 2013. Order Granting Mot. for Extension of Time to File Response, ECF No. 16 (hereinafter, "Doc. 16"). On March 15, 2013, the Government filed its Opposition. Doc. 17. The Defendant filed his Response on March 19, 2013. Def.'s Reply to Gov't Opp'n, ECF No. 18 (hereinafter, "Doc. 18").

## II. LEGAL STANDARDS

"[T]he Fifth Amendment requires only that, '[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charges on the merits.'" United States v. Mills, 995 F.2d 480, 487 (4th Cir. 1993) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)). Thus, generally, "courts lack authority to review either the competency or sufficiency of evidence which forms the basis of an indictment and may not quash indictments when the errors which produce them, such as prosecutorial misconduct or violation of a statute, do not affect substantial rights." Id.

In United States v. Mendoza-Lopez, however, the United States Supreme Court held that due process requires that an alien charged with illegal reentry, in violation of 8 U.S.C. § 1326,

4

have the opportunity to collaterally challenge the underlying deportation proceeding, if the proceeding violated the alien's rights. 481 U.S. 828, 837, 842 (1987); see also 8 U.S.C. § 1326(d) (codifying the Mendoza-Lopez holding). Thus, the success of Defendant's Motion hinges on whether Defendant can successfully launch a collateral challenge to his 1996 deportation proceeding, upon which the single-count Indictment relies.

### III. ANALYSIS

"Because a deportation order is an element of the offense of illegal reentry, the Supreme Court has recognized that an alien can collaterally attack the propriety of the original deportation order in the later criminal proceeding." United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005) (citing Mendoza-Lopez, 481 U.S. at 838-39). To successfully launch a collateral challenge against an underlying deportation proceeding, a defendant must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(1)-(3); see also Mendoza-Lopez, 481 U.S. at 840; United States v. Aquino-Chacon, 905 F. Supp. 351, 353 (E.D. Va. 1995) aff'd, 109 F.3d 936 (4th Cir. 1997). Because the requirements of 8 U.S.C. § 1326(d) are listed in the conjunctive, "a defendant must satisfy all three in order to prevail;" where this requirement is met, the illegal reentry charge must be dismissed as a matter of law. El Shami, 434 F.3d at 663 (quoting United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003)).

### A. Whether Defendant Exhausted Available Administrative Remedies

Section 1326(d) requires a defendant to demonstrate that he has exhausted all available administrative remedies. 8 U.S.C. § 1326(d)(1). Satisfaction of the § 1326(d)(1) exhaustion

requirement depends on the particular circumstances of removal, but generally requires that an individual that has been ordered deported either move to reopen or rescind their deportation hearing, or, if available, appeal the deportation order. See, e.g., United States v. Copeland, 376 F.3d 61, 67 (2d Cir. 2004). If the motion to reopen or rescind is denied, the individual must appeal the denial to the Bureau of Immigrant Affairs ("BIA"). Id. (finding such an appeal "fulfills the purposes of the exhaustion requirement" because the proceeding allows the BIA to correct any errors and allows the alien to supplement the record with more evidence.). While, ordinarily, statutory exhaustion requirements are not subject to exceptions, the exhaustion requirement in § 1326(d) must be excused where an alien's waiver of administrative review was not knowing and intelligent. United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004).

In Sosa, the United States Court of Appeals for the Second Circuit held that the defendant's waiver of his right to appeal was not knowing and intelligent because the Immigration Judge ("IJ") did not inform him of his right to apply for relief from deportation. Id. at 137. In explaining their holding, the court noted that in Mendoza-Lopez, the Supreme Court excused the failure to exhaust administrative remedies where proceedings denied a defendant the opportunity for judicial review because the IJ failed to fulfill its obligation to adequately inform an alien of available options for relief. Id. This failure was intolerable, in light of the removal system's reliance "on IJs to adequately explain the law to pro se aliens." Id. (quoting Copeland, 376 F.3d. at 71).

Several opportunities for administrative relief were available to an alien whose deportation order was entered in absentia in July 1996. Such an individual may have been eligible to seek rescission of the deportation order. See 8 U.S.C. § 1252b(c)(3)(B) (1994)

6

(noting that an alien that demonstrates that he was in Federal or State custody may be eligible to seek rescission) (repealed 1996). However, an alien whose deportation order was entered in absentia also forfeits certain rights. See, e.g., 8 C.F.R. § 242.21(a) (1997) (prohibiting appeal to the BIA).

Defendant readily admits he did not challenge the 1996 deportation order. Doc. 18 at 2. This admission has no impact on his failure to appeal the deportation order, as such appeal was unavailable to Defendant, whose order had been entered in absentia. See 8 C.F.R. § 242.21(a) (1997). However, Defendant also failed to seek rescission of the deportation order. 8 U.S.C. § 1252b(c)(3)(B) (1994). This would ordinarily end the § 1326(d) analysis, as it is an open admission of a failure to exhaust administrative remedies; however, Defendant attributes this failure to that fact that "he was not informed of his right to appeal, nor of any of the forms of relief to removal to which he may have been entitled." Doc. 18 at 2. Defendant points out that in July 1996, as now, regulations governing the conduct of deportation hearings required IJs to inform aliens of their right to appeal, either in their written, oral, or summary decisions. Doc. 18 at 2; see 8 C.F.R. §§ 242.16, 242.19 (1997); United States v. Cerda-Pena, 799 F.2d 1374, 1377 (9th Cir. 1986).[9] Because his hearing was allegedly wrongfully conducted in absentia, Defendant contends he was not informed of his right to appeal, nor of any forms of relief to which he might have been entitled. Doc. 18 at 2.

In response, the Government argues that Defendant's wrongdoing was the proximate cause of his unavailability, and thus, the IJ's failure to inform Defendant of his rights. Doc. 17 at 6. Defendant makes two arguments in an effort to rebut the Government's implication that by being arrested Defendant waived his rights to appeal. Doc. 18 at 2. First, because Defendant

---

[9] The current version of these regulations can be found at 8 C.F.R. §§ 1240.10, 1240.13 (2013).

was ultimately not convicted of the matter for which he was arrested, his bad conduct is not to blame for his unavailability. Id. Second, the Government's argument for waiver by conduct ignores the legal point that such waiver is invalid because it was neither voluntary nor knowing. Id. Defendant concludes that the proceeding held in absentia was an invalid waiver of Defendant's rights, which would excuse his failure to exhaust administrative remedies. Id.; see also Sosa, 387 F.3d at 136.

Here, Defendant's failure to exhaust administrative remedies must be excused. Defendant openly admits failing to pursue rescission of the order entered in absentia, the only administrative remedy available to him, but insists that failure was because of his ignorance of the availability of the remedy, which was caused by the INS's deprivation of his right to be present at his deportation proceeding. Doc. 18 at 2. For all intents and purposes, Defendant was unrepresented in his deportation proceeding, a fact of which the Immigration Court was aware. Doc. 13, Ex. 2. Despite this, and the knowledge that Defendant was in custody in Florida (under an INS detainer), the INS proceeded to hold a hearing in absentia, ordered Defendant deported, and did not inform Defendant of the right to appeal the deportation order. Doc. 13 at 2-3. Practically, this omission foreclosed Defendant's ability to exhaust administrative remedies. Such behavior is analogous to the deprivations lamented in Sosa, Mendoza-Lopez, and Copeland. See Sosa, 387 F.3d at 137. Defendant was unaware of any available administrative remedies, because his rights were constructively waived by his hearing being wrongfully conducted in absentia.[10] Because any such waiver would have been unknowing and involuntary, Defendant's obligation to exhaust all administrative remedies should be excused. See El Shami,

---

[10] This point is discussed, infra, starting at page 14.

8

434 F.3d at 663-64. Accordingly, the Court **FINDS** that Defendant's failure to exhaust available administrative remedies must be excused.

## B.    Whether Defendant was Denied the Opportunity for Judicial Review

"To satisfy the requirement of § 1326(d)(2) a Defendant must demonstrate he was denied the opportunity for judicial review of his deportation order." Sosa, 387 F.3d at 131; 8 U.S.C. § 1326(d)(2); see also United States v. Wilson, 316 F.3d 506, 509 (4th Cir. 2003) abrogated on other grounds by Lopez v. Gonzales, 549 U.S. 47 (2006). The opportunity for judicial review is denied where an alien is either misinformed by the IJ, or the IJ fails to inform an alien of rights that are subsequently waived. See Mendoza-Lopez, 481 U.S. at 841-42. However, "there is no stand-alone right to notice of the availability of judicial review," as due process is not offended by the failure to provide notice of judicial remedies that are readily available in case law and statutes. United States v. Lopez, 445 F.3d 90, 96 (2d Cir. 2006). Moreover, while the "availability of habeas review is sometimes deemed to constitute an opportunity for judicial review," "judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." Id.; Copeland, 376 F.3d at 68. Additionally, courts have observed a relationship between the failure to exhaust administrative remedies and the denial of opportunities for judicial review; "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid." Sosa, 387 F.3d at 136.

An alien may seek judicial review of a deportation order entered in absentia; however, the petition for judicial review is limited in scope. See 8 U.S.C. § 1229a(b)(5)(D) (1994). Specifically, the alien is restricted to argument regarding the issues of: validity of notice, reasons for the alien's not attending the proceeding, and to whether the evidentiary standard for

9

deportability had been established. Id. An alien in custody may also seek judicial review of a deportation order via a petition for writ of habeas corpus; however, such review is only available while the alien remains in the United States and can only be sought after the alien has exhausted available administrative remedies. 8 U.S.C. § 1105a (b)-(c) (effective Apr. 24, 1996).

Defendant argues that all reasonably available opportunities to pursue judicial relief were foreclosed when a deportation order was entered against Defendant in absentia, and Defendant was deported twenty-five days later. Doc. 18 at 3. The Government argues that Defendant simply failed to pursue any of the number of options available to him. Doc. 17 at 5-6.

Here, Defendant was ordered deported in absentia, while pro se and detained (on order by the INS) in jail in Dade County, Florida. Like the Defendant in Sosa, Defendant had no means of obtaining legal counsel, of discovering the remedies available to him, or of filing an appeal or petition for habeas corpus in the twenty-five days that passed between the issuance of the order of deportation and Defendant's removal to Honduras. Sosa, 387 F.3d at 138. Thus, while means of reviewing the deportation order, including a habeas petition, were technically available, the practical effect of the timing of Defendant's order of deportation and removal to Honduras was that it was "'too brief to afford a realistic opportunity of filing a habeas petition.'" Id. at 137 (quoting Copeland, 376 F.3d at 68).

The Government's argument regarding the information provided to Defendant on the day of his deportation is inapposite. Doc. 17 at 5. The information was provided as Defendant was being taken out of the country, and it merely warned of the illegality of Defendant's return without getting permission to reenter the country, which required Defendant to assume that his deportation order is legitimate and final. Id. Most importantly, the information provided did not

apprise Defendant of how he could challenge the deportation order. Id. Because it did not inform Defendant of his right to challenge the deportation order, or a means of making such a challenge, this document cannot be offered as evidence that Defendant had opportunity for judicial review, or that the INS remedied the deprivation caused by the order entered in absentia and swift removal.

Because Defendant, a pro se alien, was not informed of his right to judicial review and then swiftly removed from the country before such rights had expired, Defendant was, for all practical purposes, denied opportunity for judicial review. El Shami, 434 F.3d at 664; Sosa, 387 F.3d at 138. Accordingly, the Court **FINDS** Defendant was denied meaningful opportunity for judicial review.

**C.     Whether the 1996 Deportation Proceeding was Fundamentally Unfair**

Section 1326(d)(3) requires a Defendant to demonstrate that the entry of the underlying deportation order was "fundamentally unfair." 8 U.S.C. § 1326(d)(3). To demonstrate fundamental unfairness, "'a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" El Shami, 434 F.3d at 664 (quoting Wilson, 316 F.3d at 510).

*1. Framing the Due Process Right at Issue*

As an initial matter, there appears to be a dispute as to how to frame the due process right at issue. Defendant alleges that by wrongfully conducting his deportation hearing in absentia, he was deprived of his fundamental right of due process. Doc. 13 at 6. In the context of deportation, due process requires "an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." El Shami, 434 F.3d at 665 (quoting United States v. Torres, 383 F.3d

92, 104 (3d Cir. 2004)). Essentially, this means that an alien facing deportation must have "the opportunity to be heard at a meaningful time and in a meaningful manner." El Shami, 434 F.3d at 664-65.

The Government argues that Defendant cannot show that his due process rights were violated by a defect in his underlying deportation proceeding, because Defendant's alleged deprivation was of "some vaguely possible discretionary relief for which he might have been eligible." Doc. 17 at 8. The Government maintains that a defendant seeking to meet a due process fundamental unfairness burden must show a deprivation of a liberty or property interest. Id. Denial of discretionary relief, the Government argues, is not a cognizable liberty or property interest because it is not a statutory entitlement, but rather is completely discretionary in nature. In support of this view, the Government relies on Wilson, Torres, and several other cases involving aliens that were denied discretionary relief.

The facts of Wilson and Torres are easily distinguishable from the case before the Court. In Wilson, the defendant appeared at his deportation hearing and conceded deportability, but because he was a lawful permanent resident, "requested that the IJ grant him a waiver of deportation pursuant to section 212(c) of the Immigration and Naturalization Act ("INA")." Wilson, 316 F.3d at 508; see also 8 U.S.C. § 1182(c) ((1994 & Supp. | 1997) (enacted Apr. 24 1996) (codifying INA § 212(c)).[11] The IJ's denial of Wilson's request was affirmed by the BIA, and Wilson was subsequently removed. Wilson, 316 F.3d at 508-09. Wilson later reentered the country without permission, and was indicted for unlawful reentry, in violation of 8 U.S.C. § 1326. Id. Wilson moved to dismiss the indictment on the grounds that his underlying

---

[11] This section of the statute gave the attorney general broad discretion to admit aliens that were otherwise excludable, and authorized certain eligible aliens, including Wilson, to apply for a discretionary waiver of deportation. 8 U.S.C. § 1182(c) (1994 & Supp. | 1997).

deportation order was invalid because he was impermissibly denied the opportunity to apply for a § 212(c) waiver. Id. The facts of Torres are very similar to Wilson. Torres, 383 F.3d at 95. There, the defendant challenged his underlying deportation order because he was removed following a deportation proceeding where he was not informed of the availability of discretionary relief under § 212(c). Id. Like the defendant in Wilson, Torres was present at his deportation hearing. Id.

Thus, the question raised in the Government's cited cases, was whether an IJ's decision to deny, or not even make § 212(c) relief available, was a procedural error that rises to the level of a due process violation. This is not the question before the Court. Here, Defendant alleges that his rights were violated by a hearing held in absentia. Unlike the defendants in Wilson and Torres, Defendant's deportation hearing was held in his absence. Wilson, 316 F.3d at 508; Torres, 383 F.3d at 95. Indeed, Defendant's circumstances are more analogous to the defendant in El Shami, who because he did not receive notice of a hearing, despite being aware of the charges against him, was deprived "of the opportunity to contest those charges or otherwise seek relief from deportation." El Shami, 434 F.3d at 665. The Fourth Circuit concluded that such a deprivation was sufficient to satisfy the deprivation of due process prong of the fundamental unfairness requirement. Id.

Accordingly, the Court **HOLDS** that an individual who was deported after a hearing wrongfully held in absentia has a cognizable due process interest.

*2. Whether Defendant's Deportation Hearing was Improperly Conducted in Absentia*

Congress expressly set forth the manner in which a deportation proceeding is conducted by the INS. See 8 U.S.C. § 1252 (1994). These instructions explicitly address when an IJ may conduct a deportation hearing in absentia:

> [i]f any alien has been given a **reasonable opportunity to be present** at a proceeding under this section, and **without reasonable cause fails or refuses to attend or remain in attendance** at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present.

8 U.S.C. § 1252(b) (1994 & Supp. | 1997) (emphasis added). The INS's administrative decisions are similarly instructive, "[a] hearing in absentia is appropriate where the alien had notice of his hearing, had an opportunity to attend, and showed no reasonable cause for his failure to appear." Matter of Peugnet, INS Interim Decision # 3142, A-27538066 (Jan. 29, 1991); see also I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984) ("[an alien] must be given "a reasonable opportunity to be present at [the] proceeding," but if the respondent fails to avail himself of that opportunity the hearing may proceed in his absence.").

    i.   Whether Defendant was given Reasonable Opportunity to be Present at His Deportation Proceeding

An alien has been given a "reasonable opportunity to be present at [a deportation] proceeding" when he (or his attorney of record) has received advance notice of the time and place at which the hearing will be held, and such notice contains clear warnings of the consequences for failing to appear, including the possibility of an in absentia hearing as well as an order of deportation being entered. See Shah v. I.N.S., 788 F.2d 970, 972 (4th Cir. 1986); see

14

also Patel v. I.N.S., 803 F.3d 804, 806 (5th Cir. 1996).[12] Notice must be consistent with statutory requirements; among other things, it must apprise the alien of: (1) the nature of the proceeding; (2) the charges against the alien; (3) the alien's right to be represented by privately retained counsel; (4) the alien's obligation to provide the INS with a written record of current contact information, and the consequences for failure to do so; (5) the time and place of the hearing; and (6) the consequences for failing to appear at the hearing. See 8 U.S.C. § 1229(a)(1) (1994). Such notice may be served personally on the alien, or served to the alien (or his counsel of record) by mail. Id. If the time and place of the hearing is changed, written notice of the changes and the consequences for failing to appear must be served on the alien personally or by mail to the alien's last address of record. 8 U.S.C. § 1229(a)(2)(A) (1994). If no address has been provided, notice is not required. 8 U.S.C. § 1229(a)(2)(B) (1994).

Here, Defendant had a reasonable opportunity to be present at the 1996 deportation hearing. Defendant admits that he was personally served with the Order to Show Cause at a Florida detention center on January 2, 1996. Doc. 13 at 2.[13] Indeed, the last page of the document indicates Defendant received written and oral notice of the Order to Show Cause, in both Spanish and English; the document includes Defendant's signature and thumbprint. Id. Thus, it is clear that Defendant received notice of the Order to Show Cause.

Defendant argues, however, that notice is defective because he has no record that notice of the rescheduled hearing was sent to him. Doc. 13 at 2. In response, the Government alleges

---

[12] But see, Maldonado-Perez v. INS., 885 F.2d 328, 339 (D.C. Cir. 1989) (Wald, C.J., dissenting) (noting that "Congress intended "opportunity" to mean more than mere "notice," because legislative history indicates that the "extreme of an in absentia proceeding was intended as an extraordinary punitive measure" for aliens that "refused to attend" proceedings "without legitimate cause").

[13] The Order to Show Cause details Defendant's five Florida controlled substance convictions, and indicates that these convictions make defendant subject to deportation pursuant to INA §§ 241(a)(2)(B)(i) and 241(a)(2)(B)(iii). Doc. 13, Ex. 1. It also advises Defendant of his obligations to inform the INS of changes in his address. Id.

that on June 10, 1996, written notice of rescheduled hearing was sent via certified mail to Defendant's address of record. Doc. 17 at 2. The Government also offers evidence that supports their allegation. See Doc. 17, Ex. 2.[14]

Here, the evidence presented by the Government is sufficient to convince the Court that Defendant received notice of both the charges against him, as well as the date and time of the rescheduled hearing. See Shah, 788 F.2d at 972. Moreover, Defendant's bare assertion that he did not receive notice is insufficient to overcome the "strong presumption of delivery" extended to the INS when notice is sent by certified mail. See Nibagwire v. Gonzales, 450 F.3d 153, 156 (4th Cir. 2006) (discussing Adolfo Jose Grijalva, 21 I. & N. Dec. 27 (1995)). Accordingly, the Court **FINDS** that Defendant was afforded a reasonable opportunity to be present at his deportation proceeding.

ii.     Whether Defendant had Reasonable Cause for His Absence

That Defendant was afforded a reasonable opportunity to be present at his deportation hearing does not end the inquiry, however. An IJ's decision to conduct a deportation proceeding in absentia is in error if the alien had "reasonable cause" for his failure to appear. 8 U.S.C. § 1252(b) (1994 & Supp. | 1997). While there is very little precedent on what constitutes reasonable cause, there are many examples of unreasonable absence from deportation proceedings. Longia v. Mukasey, 312 F. App'x 2 (9th Cir. 2008) (finding reasonable cause where the INS did not mail notice to the precise contact information provided by the alien, and

---

[14] Specifically, the Government offers two exhibits, a copy of a letter dated June 10, 1996, which apprises Defendant that his deportation hearing will be held July 26, 1996 in Oakdale, Louisiana, warns of the consequences for failure to attend, reiterates the obligation to keep address information current with the INS, and indicates that Defendant may be represented by appropriately accredited counsel. Doc. 17, Ex. 2. The Government also includes a copy of a certified mail return receipt, dated June 14, 1996, that appears to be signed by Defendant. Doc. 17, Ex. 3. The signature on this receipt matches the Defendant's signature on the Order to Show Cause. Compare Doc. 17, Ex. 1 with Doc. 17, Ex. 3.

the evidence the INS sought to rely upon was inadequate); Patel, 803 F.2d 806 (finding petitioner's failure to appear because he was advised not to attend by his attorney while a continuance was pending did not establish reasonable cause); Maldonado-Perez, 865 F.2d 328 (finding no reasonable cause for absence where alien failed to attend the hearing because his appeal of a denied motion to change venue was pending); Scorteanu v. I.N.S., 339 F.3d 407, 413 (6th Cir. 2003) (finding attorney's failure to notify alien of asylum hearing and fraudulently advising the alien that his case was still pending was an exceptional circumstance warranting rescission of an order of removal entered in absentia); Magdaleno de Morales v. I.N.S., 116 F.3d 145, 148 (5th Cir. 1997) (mechanical failure of the petitioners' car on the way to the hearing was not reasonable cause for their absence at their deportation hearing where they hitchhiked back home, failed to call the court to advise them of their inability to attend, and did not correspond with the court until receiving their in absentia deportation order in the mail two weeks later). Reasonable cause, at bare minimum, seems to require timely communication with the Immigration Court regarding one's absence. See Maldonado-Perez, 865 F.2d at 335 (noting that the IJ delayed the petitioner's deportation hearing for hours, "hoping that someone would call and explain the petitioner's absence.").

While not directly on point, the Immigration and Nationality Act's ("INA") provisions on when an alien against whom a deportation order was entered in absentia may seek rescission are instructive. See 8 U.S.C. § 1252b(c)(3)(B) (1994).[15] There, Congress provided a safety valve against the harsh consequences of failing to appear at a deportation proceeding to individuals that could demonstrate either: (1) their absence was due to "exceptional circumstances," statutorily defined as an alien's serious illness or the death of an immediate relative, but nothing less

[15] Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990).

compelling; (2) that he did not receive the statutorily required notice of the proceeding; or (3) the alien was in Federal or State custody and did not appear through no fault of his own. Id. Demonstration of any of these circumstances by the appropriate deadline (180 days for exceptional circumstances, at any time for the other two reasons) would justify seeking rescission of the order and holding a new proceeding. Moreover, an alien's deportation order would be stayed while the petition was pending. Id.

Here, the IJ inappropriately concluded that Defendant's absence lacked reasonable cause. Defendant argues that his absence from his deportation hearing was reasonable in light of the fact that he was in Dade County jail, a fact of which the INS was aware, as they contacted the jail the day after Defendant's arrest to place a detainer on Defendant. Doc. 13 at 6.[16] The Government argues that Defendant's bad conduct caused his unavailability, and suggests that by seeking to invalidate the order of deportation entered in absentia, Defendant is seeking a reward for his misdeeds. Doc. 17 at 11.[17]

The Government's argument must fail. The rescission provision of the INA is helpfully illustrative of situations where there clearly is reasonable cause for absence. See 8 U.S.C. § 1252b(c)(3)(B) (1994). Defendant's precise factual circumstances are addressed in that statute— he was in state custody (at the direction of the INS)—and thus all aspects of his mobility were outside his control.[18] Thus, forfeiture of the right to be present at a deportation hearing is not an

---

[16] At the hearing, the Government indicated that the IJ and the INS trial attorneys were unaware of the fact that Defendant was in police custody as well as the fact that the INS had placed a detainer on Defendant. As stated during the hearing, the Court finds this ignorance unacceptable, given the INS attorneys were employed by the very agency that placed the detainer on Defendant nearly a month prior.

[17] The Court finds this argument disingenuous, as it later came out at the hearing that the Government was aware that Defendant was never convicted for stealing a car.

[18] Moreover, as Defendant was never convicted of the crimes for which he was arrested, it seems inappropriate to attribute his incarceration to his bad conduct, or to characterize it as a reward for his misdeeds.

additional punishment for an individual whose alleged shortcomings caused him to end up in state custody.[19] Assuming arguendo, that Defendant's poor choices landed him in jail, the INS was equipped to accommodate aliens in law enforcement custody, because the agency frequently detains individuals prior to deportation proceedings. See 8 U.S.C. § 1226(e) (1994). For example, the statute permits deportation proceedings to be held via telephone. 8 U.S.C. § 1229a(b)(2) (1994). Despite the INS's knowledge that Defendant was being held in a South Florida jail (in part under INS detainer), and the existence of regulations permitting the agency to be flexible in the manner in which a hearing was held, the IJ was not informed of the cause for Defendant's absence, and no effort was made to produce Defendant for the proceeding, either in person or by telephone. These facts, coupled with explicit congressional reference to situations where aliens are deported in absentia while in custody, strongly suggest that Defendant's failure to appear was reasonable, despite the Government's arguments to the contrary. Because being in police custody was reasonable cause for Defendant's absence from his deportation hearing, particularly since the INS knew Defendant was in police custody (and asked the jail to hold Defendant under an INS detainer, no less) at the time of the hearing, the Court **FINDS** that the decision to hold deportation proceedings in absentia was in error.

***

---

[19] The Court notes, however, that the record does not support the supposition that Defendant's shortcomings were the reason he ended up in Dade County Jail. Rather, as noted in the excerpt of the police report provided by the Government, Defendant was apparently arrested because he was a passenger in a car whose driver was using his mother's car without permission. Doc. 17, Ex. 4. Apparently, the mother had lent Defendant's friend the vehicle, and flagged down a police officer to report the car stolen when Defendant's friend failed to return the car when promised. Id. When speaking to the officer, Defendant's friend's mother indicated this was not the first time her son (Defendant's friend – the driver of the car) had exceeded the scope of permission to use the car. Id. It appears that this report was insufficient to sustain prosecution of the Defendant for Grand Theft Auto and other charges, as evidenced by the note that reads "no action" that is written across the charges in the arrest report. Id.

Accordingly, the Court **FINDS** Defendant's deportation proceeding was procedurally defective.

### 3. Whether Defendant was Prejudiced by His Defective Deportation Hearing

That Defendant's deportation proceeding was procedurally defective does not end the fundamental fairness inquiry. A defendant must also demonstrate that the complained of procedural defect prejudiced him. El Shami, 434 F.3d at 664. Specifically, a defendant must show that, "but for the errors complained of, there was a reasonable probability that he would not have been deported." Id. at 665; see also Luna, 436 F.3d at 321 ("The standard for prejudice in this context is 'a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred.'").

Defendant argues that by wrongfully holding his deportation procedure in absentia he was deprived of the right to be informed of his rights to appeal and of relief that may have been available to him. Defendant's argument, however, barely mentions the right to be informed, instead focusing on the forfeiture of his right to pursue statutory relief from deportation. Doc. 13 at 7. In his Motion, Defendant lists four types of relief that may have been available. Id. In the Reply, Defendant has narrowed that focus down to a single form of relief—an application for Cancellation of Removal under 8 U.S.C. § 1229b. Doc. 18 at 4-5.[20] Because the Government's

---

[20] The statute provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a) (1994).

Opposition addresses Defendant's probability of getting relief under INA § 212(c), the Court will

also consider the probability that Defendant would have received such relief. Doc. 17 at 9.[21]

### i. Eligibility for Cancellation of Removal–Aggravated Felony

Defendant argues that he was eligible for Cancellation of Removal because he was a

lawful permanent resident that had been in the country for the requisite period, and had not been

convicted of an aggravated felony. The Government argues that Defendant was an aggravated

felon for purposes of immigration law, and thus ineligible.

An individual is eligible for Cancellation of Removal if, among other requirements, they

have not been "convicted of an aggravated felony." 8 U.S.C. §1229b(a) (1994). In 1996, as

now, for immigration purposes, an "aggravated felony" in the controlled substance context was

defined as, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21),

including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. §

1101(a)(43)(A) (1996). Section 924(c) defined "drug trafficking crime" to include "any felony

punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled

---

[21] Section 212(c) provides:

> [a]liens lawfully admitted for permanent residence who temporarily proceeded
> abroad voluntarily and not under an order of deportation, and who are returning
> to a lawful unrelinquished domicile of seven consecutive years, may be admitted
> in the discretion of the Attorney General . . . This subsection shall not apply to
> an alien who is deportable by reason of having committed any criminal offense
> covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense
> covered by section 1251(a)(2)(A)(ii) of this title for which both predicate
> offenses are, without regard to the date of their commission, otherwise covered
> by section 1251(a)(2)(A)(i) of this title.

8 U.S.C. § 1182(c) (1994 & Supp. | 1997).

The Government argues that Defendant would not have been eligible for relief under the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), because the act eliminated INA § 212(c) (8 U.S.C. § 1182) relief. Pub. L.
No. 104-132, 110 Stat. 1214 (1996). At the time Defendant was deported, the INS had a practice of interpreting this
provision as retroactively applicable to eliminate § 212(c) relief for individuals who plead guilty to certain crimes
before the effective date of the act. That practice, however, was recognized as unconstitutional by the Supreme
Court in I.N.S. v. St. Cyr, 533 U.S. 289, 326 (2001). As a result, such relief would be available to Defendant,
because he was convicted of possessing Cocaine in 1995, before the enactment of the AEDPA.

Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)." 18 U.S.C. § 924(c)(2) (1994). The Controlled Substance Act, in turn, prohibits simple possession of controlled substances, including marijuana and cocaine. 21 U.S.C. § 844(a) (1994). However, simple possession is punished as a misdemeanor, unless the conviction for simple possession followed a prior conviction for any drug or narcotic offense punishable under federal law or "chargeable under the law of any State," in which case the second conviction would be punished as a class E felony. See 21 U.S.C. § 844(a) (1994); see also 18 U.S.C. § 3559(a)(5) (1994). However, 21 U.S.C. § 851 provides:

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (1994).

Thus, to punish Defendant as a felon for simple possession under the recidivist provision found at 21 U.S.C. § 844(a), INS trial attorneys would have had to prove that the Florida court convicting Defendant of possession of cocaine in 1995 had established Defendant's 1994 conviction for possession of marijuana as an element of their case. See Carachuri-Rosendo v. Holder, 130 S. Ct. 2577, 2589 (2010) (arriving at this conclusion following analysis of 8 U.S.C. § 1229b(a)(3) and 21 U.S.C. §§ 844(a), 851(a)—provisions that were in effect in 1996). Because neither the Order to Show Cause nor the Decision of the Immigration Judge, Doc. 13, Exs. 1, 7, indicate that such a finding was made, Defendant's multiple convictions for possession of a controlled substance cannot be treated as analogous to federal felonies under the Controlled

Substance Act. See Carachuri-Rosendo, 130 S. Ct. at 2586 ("Although a federal immigration court may have the power to make a recidivist finding in the first instance . . . it cannot, ex post, enhance the state offense of record just because facts known to it would have authorized a greater penalty under either state or federal law.").

Because the Court **FINDS** that the IJ would likely have been unable to conclude that Defendant was convicted of any aggravated felony, the Court **FINDS** that Defendant would have been eligible for relief under the Cancellation of Removal provisions found in 8 U.S.C. §1229b(a). Thus, the Court must now determine whether there was a reasonable probability that Defendant would receive such relief.[22]

ii. Balancing the Equities

The framework for an equitable application of discretionary relief balances adverse factors against favorable factors. Matter of Marin, 16 I. & N. Dec. 581, 584 (1978); see also El Shami, 434 F.3d at 665. Adverse factors include: (1) the nature and underlying circumstances of the exclusion ground at issue; (2) the presence of additional significant violations of this country's immigration laws; (3) the existence of a criminal record and, if so, its nature, recency, and seriousness; and (4) the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. Marin, 16 I. & N. Dec. at 584. Favorable considerations include: (1) the extent of Defendant's family ties in the United States; (2) the length of residency in the country, particularly if from childhood; (3) evidence of hardship to the respondent and family if deportation occurs; (4) military service; (5) employment

---

[22] The Court acknowledges that this next step of the analysis requires the Court to speculate as to what would have happened in 1996. The Court does so reluctantly, because existing authority requires such speculation. Absent the existence of such authority, however, the Court would find the fact that Defendant's hearing was held in absentia, despite the INS's knowledge of Defendant's location, sufficiently egregious to render the hearing a nullity, justifying dismissal of the Indictment.

history; (6) the existence of property or business ties; (7) evidence of value and service to the community; (8) proof of a genuine rehabilitation if a criminal record exists; and (9) other evidence of good character. Id. at 585. "[W]hen an alien has a record of serious criminal activity, however, he must demonstrate "unusual or outstanding equities" in order to be eligible for a favorable exercise of discretion[.]" Gandarillas-Zambrana v. Bd. of Immigration Appeals, 44 F.3d 1251, 1259 (4th Cir. 1995); see also Matter of Burbano, 20 I. & N. Dec. 872, 875 (1994) (finding a lengthy criminal history requires an individual to show unusual or outstanding equities).

Here, the factual record is undeveloped, because unlike the petitioners in the available case law, Defendant was denied the opportunity to present facts in support of his application for discretionary relief. Nevertheless, on the facts presented, the Court believes that there is a reasonable likelihood that the Immigration Court would have found that the balance of equities would favor granting Defendant discretionary relief from deportation.

a.  Adverse Factors

Defendant's circumstances trigger several adverse factors. Marin, 16 I. & N. Dec. at 584. First, the nature and circumstances of the grounds for Defendant's exclusion—Defendant was subject to deportation because Defendant was convicted of committing multiple controlled substance offenses. However, Defendant's convictions were for simple possession, rather than importing, trafficking, or distribution. See Doc. 13, Ex. 1. Absent an explicit finding that a defendant's prior convictions qualified for application of a recidivist provision, such offenses were considered analogous to federal misdemeanors. See 21 U.S.C. § 844(a) (1994); see also 18 U.S.C. § 3559(a) (1994). In Wilson, the Fourth Circuit found the defendant's conviction for

24

felony possession of cocaine was a serious criminal act, requiring demonstration of "unusual or outstanding" equities in order to be eligible for discretionary relief. Wilson, 316 F.3d at 511. However, the defendant in Wilson was initially indicted for possession with intent to distribute cocaine, and pled guilty to the lesser-included offense of possession. Id. at 508. This suggests that simple possession of cocaine is considered less serious criminal conduct than drug trafficking. See Blackwood v. I.N.S., 803 F.2d 1165, 1166, 1168 (11th Cir. 1986) (finding offense serious where Defendant was convicted of possession and trafficking of marijuana); Ayala-Chavez v. I.N.S., 944 F.2d 638, 641 (9th Cir. 1991) ("The BIA requires a showing of outstanding equities by applicants for discretionary relief who have been convicted of serious drug offenses, particularly trafficking."); see also Burbano, 20 I. & N. Dec. at 877 n.4 (noting that the BIA "viewed a 'serious' drug offense as a drug trafficking crime which constitutes an 'aggravated felony,' and acknowledging that some offenses would be considered more or less serious than others). Thus, this factor, while negative, does not carry substantial weight, because Defendant's offenses and criminal record were not serious or lengthy enough to require outstanding or unusual equities to make equitable relief available.

The second adverse factor discussed in Marin favors Defendant, as the deportation proceeding at issue in this Motion is the only alleged violation of this country's immigration laws. Marin, 16 I. & N. Dec. at 584.

The third factor—the presence of a criminal record, and if so, consideration of its seriousness, and recency—does not favor Defendant. Marin, 16 I. & N. Dec. at 584. In 1996, Defendant had been convicted five times for possession of controlled substances between September 1994 and April 1995. Doc. 17, Ex. 1. As discussed above, a federal simple

possession offense is punished as a misdemeanor, suggesting such offenses, while attracting congressional concern, are not viewed as particularly serious. See 21 U.S.C. § 844(a) (1994); see also 18 U.S.C. § 3559(a) (1994). Indeed, the INS saw fit to release Defendant from an immigration detention center on bond. Doc. 13 at 2. Surely, Defendant's five convictions for simple possession, four for possessing marijuana, are less serious than in El Shami, where despite defendant's convictions for criminal sexual contact and aggravated arson, the Fourth Circuit found it reasonably likely the defendant would not have been deported. El Shami, 434 F.3d at 665-66. While Defendant's last criminal conviction was a mere four months before the INS began deportation proceedings, and only a little over a year old at the time Defendant was ordered deported and removed from the country, recency is only a factor because the INS decided to move swiftly in this case. But see, El Shami, 434 F.3d at 661 (three year span between Defendant's last conviction and commencement of deportation proceedings).

The fourth and final adverse factor, which considers the presence of other evidence of Defendant's bad character or undesirability as a permanent resident, is at worst, neutral. The only other "evidence" of Defendant's bad character available, is Defendant's arrest for stealing a car in June 1996. Doc. 17 at 2. However, as noted above, Defendant was never convicted of this offense. Indeed, the Government's exhibit suggests that Munoz-Giron was not actually involved in stealing the vehicle, rather, his companion Alvarez, borrowed the car from his mother, and failed to return it when promised. Doc. 17, Ex. 4. Moreover, the police report indicates no action was taken, suggesting a plausible case could not be brought against Defendant. Id. Finally, the BIA has declined to give substantial weight to an arrest report, without a conviction or corroborating evidence of the allegations contained therein. See In the Matter of Catalina

Arreguin De Rodriguez, Applicant, 21 I. & N. Dec. 38, 42 (1995). Thus, there appears to be no additional evidence of Defendant's bad character or undesirability as a permanent resident.

### b. Mitigating Factors

While the Court has been provided few facts supporting favorable considerations, it finds these sufficient to mitigate the above-referenced negative factors.

First, Defendant describes his family ties as extensive. Doc. 18 at 5. Defendant came to this country in 1987 with his mother, and reports that in 1996 he had an infant child that is a U.S. citizen. Thus, at minimum, Defendant's family at the time he was deported consisted of his mother, his infant child, and the child's mother. Defendant argues that deportation would cause his family to experience hardship. Consequently, this factor mitigates Defendant's adverse factors.

The second consideration, length of residency in the country, strongly favors Defendant. Marin, 16 I. & N. Dec. at 585. Munoz-Giron came to the United States in 1987, at the age of eleven, and was deported in 1996, at the age of twenty. At the time Defendant was deported, he had lived in the United States for nine years. See El Shami, 434 F.3d at 665 (finding defendant's thirteen year residence mitigated his criminal convictions for criminal sexual contact and aggravated arson); see also Arreguin, 21 I. & N. Dec. at 41 (finding alien's nineteen years of lawful permanent residence to be an unusual and outstanding equity). Importantly, Defendant came to the United States as a child. See Marin, 16 I. & N. Dec. at 584-85 (weighing residence that began while alien was of young age more heavily in the balancing of equities). Like the respondent in Arreguin, Defendant's permanent residence had been largely lawful, barring the eight-month period during which Defendant was convicted of simple possession on multiple

27

occasions. Id. Accordingly, this factor substantially mitigates Defendant's criminal record. Arreguin, 21 I. & N. Dec. at 41.

The third factor, evidence of hardship to respondent and his family if deportation occurs, also favors Defendant. Marin, 16 I. & N. Dec. at 585. At the time Defendant was deported he had an infant child, a U.S. Citizen, whom he argues would have encountered hardship if Defendant were deported. Doc. 18 at 5. Given the child's age, Defendant's argument is credible. The child's mother would have either had to arrange for childcare (at significant cost for an infant), or refrain from working until the child was old enough to be placed in childcare, which may have caused her to become a burden on the state. Defendant's presence and/or financial contribution to the household would have significantly reduced the hardship involved in arranging or paying for childcare for an infant, freeing up one of the new parents to earn funds to support the young family. Moreover, both the BIA and the courts have recognized children that are citizens and minors as outstanding equities. See El Shami, 434 F.3d at 665; Arreguin, 21 I. & N. Dec. at 41 (finding respondent's minor children constituted an outstanding equity that outweighed defendant's conviction for smuggling more than seventy kilograms of marijuana into the country). Thus, this factor substantially mitigates Defendant's criminal record.

There are insufficient facts available to decide whether factors four through seven favor Defendant. Marin, 16 I. & N. Dec. at 585. The Defendant has not raised any argument about his employment history at the time he was deported. Additionally, there was no mention of Defendant having any record of military service, or any discussion of the existence of property or business ties. Finally, no evidence of value and service to the community was offered.

The eighth consideration, evidence of rehabilitation, does not present a significant equity in Defendant's favor. Marin, 16 I. & N. Dec. at 585. Defendant's convictions occurred in an eight-month period, and Defendant was deported a little over a year after his last conviction. See Doc. 13 at 1, 3 (noting Defendant's last conviction was in April 1995, and Defendant was deported in August 1996). Defendant spent at least a month of that time in Dade County Jail, after being arrested for an offense of which he was never prosecuted or convicted. Because there was so little time between Defendant's last conviction and his deportation, the Court cannot assess whether Defendant had been rehabilitated. See Burbano, 20 I. & N. Dec. at 876 (finding more than two years without additional criminal convictions insufficient time to determine if an individual who had been convicted six times in a four year period had been rehabilitated); but see Arreguin, 21 I. & N. Dec. at 40 (finding individual's acceptance of responsibility and achievements while in prison were favorable indicators of efforts at rehabilitation to be considered when balancing the equities). The Court notes, however, that a year may have been sufficient time for Defendant to become rehabilitated, given the fact that his convictions took place during an eight month period, as opposed to the four years at issue in Burbano. 20 I. & N. Dec. at 876. Accordingly, this factor slightly mitigates Defendant's criminal convictions.

Finally, the Court considers whether there is any other evidence illustrating Defendant's good character. Marin, 16 I. & N. Dec. at 585. The Court notes that, other than the arrest in Florida, for which Defendant was not convicted, the record is silent on Defendant's compliance with the terms and conditions of his release on bond in January 1996. Thus, the court assumes that Defendant complied with these conditions, as the Government has provided ample evidence of other alleged missteps. In El Shami, the Fourth Circuit noted the defendant's compliance with

29

the terms and conditions of his bond as part of the evidence that substantially mitigated his criminal record, creating a reasonable likelihood that El Shami would not have been deported. El Shami, 434 F.3d at 665. The Court chooses to follow the Fourth Circuit's example in El Shami. Accordingly, this factor weighs slightly in favor of Defendant.

Overall, the outstanding or unusual nature of the positive equities demonstrated by Defendant substantially mitigates the relatively minor impact of Defendant's less serious convictions for simple possession.[23] Consequently, the Court **FINDS** that it was at least reasonably probable that the IJ would have granted Defendant discretionary relief, either pursuant to 8 U.S.C. §§ 1182(c) or 1229b.

***

Accordingly, the Court **FINDS** that Defendant's underlying deportation proceeding was fundamentally unfair and prejudiced Defendant.

## IV. CONCLUSION

Because Defendant's deportation proceeding was wrongfully conducted in absentia, depriving Defendant of knowledge of any available administrative remedies, the Court **FINDS** that Defendant's obligation to exhaust available administrative remedies was excused. Similarly, the Court **FINDS** that Defendant had been denied opportunity for judicial review by the deportation proceeding wrongfully conducted in absentia, and the INS's removal of Defendant before his rights to appeal had expired. Finally, the Court **FINDS** that by conducting Defendant's deportation proceeding in absentia when the INS was aware Defendant was in state custody (indeed, Defendant was under an INS detainer), the INS violated Defendant's rights to

---

[23] The Court notes, however, that even if Defendant's convictions were considered serious, the outstanding nature of the equities presented in Defendant's favor would still outweigh Defendant's convictions, requiring the same result.

procedural due process. Further, the Court **FINDS** that such violation was fundamentally unfair, as it deprived Defendant of the opportunity to pursue discretionary relief, which the Court **FINDS** prejudiced Defendant. Accordingly, for the reasons stated herein and at the hearing, the Court **GRANTS** Defendant's Motion, Doc. 13, and **DISMISSES** the Indictment.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: April 29, 2013